IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2014 APR 11  P 3: 02

CLERK'S OFFICE
AT GREENBELT
BY_____ DEPUTY

14-CV-1220-JFM

Rhonda R. Brown,
Plaintiff

v.

Evans Ridge Homeowners Association,

D.H. Bader Management Company,

Evans Ridge Board of Directors

Alyssa Robin Wolf Krieger,

Nagel and Zaller, P.C.

Linda S. Mericle, PA

City of Bowie, Maryland

City of Bowie Police Department

Sergeant Rodriquez, Individually
And in his capacity as a police officer
For City of Bowie, MD

Liberty Landscaping, L.L.C.

Several Unknown Individuals
Who are Employed by City of Bowie

Several Other Individuals
Affiliation Unknown

Baltimore Gas and Electric Company (BGE)
A Constellation Energy Group

Defendants

## COMPLAINT AND DEMAND FOR JURY TRIAL

### Introduction

This is an action for damages brought by Plaintiff for Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C., § 1692, *et seq.* and  which prohibit debts collectors from engaging in abusive, deceptive, and unfair practices.

Other claims for relief include Constitutional protections including but not limited to equal protection, due process, and civil rights.

### Background

Plaintiff, Rhonda R. Brown (Ms. Brown) is and has been a resident of the Northridge Community located in Bowie, MD since 2006.  Ms. Brown's mother lived with her in Northridge until her mother passed away in the Northridge home after a long illness.  Ms. Brown's mother assisted Ms. Brown in purchasing her home which was priced at $595,000.  Current value according to the Maryland Department of Assessments and Taxation is approximately $330,000.  Ms. Brown has paid roughly $300,000 toward her underwater home having made mortgage payments of $5,100 per month for several years with a down payment of $75,000.

This section of Northridge where Ms. Brown resides is governed by the Evans Ridge Homeowner's Association. Said association imposes two (2)

fees.  One is a monthly fee of $54.00; the second is an annual assessment. Ms. Brown is current on her monthly assessment fees.  Ms. Brown disputes the annual assessment where additional fees of about $3,000 have been charged against her in the form of liens against her property for alleged violations of the by-laws.  Ms. Brown also disputes Evans Ridge's and Bader Management's position that Ms. Brown is approximately a year behind on her monthly fees.  This was communicated to Ms. Brown when the Bowie Police were hired to "watch the community".

The law firm of Nagle and Zaller, P.C. (N & Z) was retained to file suit against Ms. Brown for the alleged debt for the $1,000 lien. Subsequently, Linda S. Mericle, P.A. (Mericle) replaced N & Z as counsel for Evans Ridge. The suit was filed in Prince George's County District Court on August 17, 2011 and labeled as a "tort" action.

<u>Harassment</u>

Ms. Brown has been harassed by the Bowie Police since she moved to the Northridge Community.  In her first year of residency in Northridge, Ms. Brown was stopped while she was walking on Fletchertown Road, which divides sections of the Northridge community. On the first occasion a white Bowie police officer stopped Ms. Brown while she was walking on Fletchertown Road and asked her what she was doing and that people in the area had complained that she was "walking through their yards".  Ms. Brown knew this was untrue as several of the residents in Northridge and neighboring communities know Ms. Brown and knew that she walked on

Fletchertown Road daily for exercise.  Further Ms. Brown never walked through anyone's yard.

On another occasion, a Bowie policeman who identified himself as "Officer Hernandez" stopped Ms. Brown when she was walking on Fletchertown Road near her home.  He demanded to see her identification and wanted to know where she lived for no articulable reason.  After brief colloquy, the policeman left.

Ms. Brown has a penchant for cars.  She owned five (5) cars when she moved to Northridge.  All of her cars displayed valid tags and were insured.  To avoid overcrowding she parked one vehicle down the street from her house.  The car was parked in front of a row of trees.  City of Bowie Police called Ms. Brown on more that one occasion to tell her to move the car because reportedly neighbors complained about where the car was parked.  Ms. Brown moved the car up the street near her home. Once again, a City of Bowie Police Officer called her and complained about where the same car was legally parked and informed Ms. Brown that if any part of the vehicle was defective they (Bowie Police) the right to tow the vehicle.  By week's end the vehicle had a shattered driver's side window which cost Ms. Brown over $300 to repair.  There was no evidence seen as to causation of the window shatter.

Currently the level of harassment by the Bowie police and residents of Northridge has reached an intolerable level.  The escalation in harassment activity became apparent when an improperly authenticated

void fraudulent default judgment from Virginia was domesticated in the Prince George's County Circuit Court in 2010. The subject of the Virginia Complaint, that Ms. Brown was never served, is that Ms. Brown defaulted on a mortgage on a property she owns in Baltimore, Maryland. Ms. Brown filed a timely motion to vacate the Virginia judgment in the Virginia court. As of this writing said motion remains pending. All of the court papers from Virginia show an incorrect address for Ms. Brown. The Order of default judgment was the only paper sent to Ms. Brown at her current home address. Despite the fact that the loan company made an illegal mortgage, has no license to create mortgage, legal counsel for the mortgage company has no debt collection license, and the certified copy of the docket shows that case was dismissed; the judgment was affirmed by the Maryland Court of Appeals. All of the court orders at the appellate level show signature stamps on the signature line for judges. Ms. Brown has experienced a number of legal problems since the domestication of the void Virginia judgment to include illegal foreclosure on her family home without notice where Ms. Brown's payments were returned to her stamped "guaranteed funds" and the sale of another property of Ms. Brown located in Prince George's County that was sold without prior notice.

Since that time, there have been several attempts to kidnap Ms. Brown by various individuals with vans without side or rear windows. Ms. Brown was informally forewarned of this activity by a neighbor. Ms. Brown complained to all of the members of the Maryland General Assembly and

other politicians about this activity which appears to have curtailed.  Ms.
Brown has taken precautionary measures in her own behalf which may
have contributed to the curtailment.   Emergency vehicles have been sent
to locate Ms. Brown by her cell phone signal.  Also some entity has
boosted the cell phone signal on Ms. Brown's iphone which exposes her to
a higher level of radiation.

More significantly the Bowie Police have been harassing Ms. Brown
by appearing at her house at night, which has been witnessed by others.
The Bowie police also parking across the street from Ms. Brown's house
and shine lights in the direction of her house.  On one occasion a man,
believed to be Bowie police officer, called Ms. Brown on her cell phone and
left a message stating something to the effect that he wanted to know if Ms.
Brown was on for the next night because "we have" some "good plays"
going on.  The next night there was a Bowie squad car parked across the
street from Ms. Brown's house with the lights shining directly into one of
her windows.

It is patently obvious to Ms. Brown that the Bowie police and others
are trying to steal non-party property (a car) from Ms. Brown which may or
may not be in her garage.  Ms. Brown has witnessed several individuals,
unknown to her, at or near her property.  There has been evidence around
Ms. Brown's home to support that individuals have looked into the
windows of Ms. Brown's garage to search for the vehicle.  Many individuals
have been on Ms. Brown's property around 3:00 a.m. several mornings

near the garage area.   The Bowie police have attempted to disable Ms. Brown's electric utility from across the street from her home to allow third parties to break into her garage in attempt to steal the mentioned vehicle. In the event Ms. Brown's electricity utility is disabled, arguably no alarm would alert the police.  The Bowie police force is the designated first responder for complaints in Ms. Brown's geographic area.  In the event a crime occurs at Ms. Brown's home and no alarm sounds the Bowie police would not have any notice to arrive at the scene.  The Bowie police have an interest in the criminal enterprise to steal from Ms. Brown as described in the body of this Complaint. Ms. Brown has seen large trucks on several occasions around her home.  When the drivers see Ms. Brown or she calls 911 the drivers drive off while the calls are in progress.  Upon information and belief, Sergeant Rodriquez was hired by Evans Ridge Homeowners Association, and/or D. H. Bader Management to disable Ms. Brown's electric utility.

These and other events are described with specificity below.

Jurisdiction and Venue

1. This Court has jurisdiction over the matters asserted herein in view of the federal questions presented herein and 28 U.S.C. § 1331. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. §1367.

2. Jurisdiction is also established in this court under the Fair Debt Collection Practices Act.

3. Declaratory and injunctive relief are available pursuant to 28 U.S.C. §§ 2201 and 2202, Md. Code Ann. §§ 3-401 – 3-415.

4. Venue in this judicial district is proper as the defendants transact business and/or reside within the judicial district of the court and the conduct complaint of occurred in the judicial district of the court.

<u>Parties</u>

5. Plaintiff, Rhonda R. Brown was at all times an individual who maintains her principal place of residence within the county and judicial district of this court.  Her address is 7700 Quill Point Drive, Bowie, MD 20720.

6. Defendant, Evans Ridge Homeowner's Association, Inc. is comprised of members of the Northridge Community which is the county and judicial district of the court.  The registered agent is David Bader, D.H. Bader Management Services the address is 14435 Cherry Lane Court, Suite 210, Laurel, MD 20707.

7. Defendant, D.H. Bader Management Company is situated within the county and judicial district of this court.  The address for D.H. Bader Management, Inc. is 14435 Cherry Lane Court, Suite 201, Laurel, MD 20707.  The resident agent for D. H. Bader, Inc. is D. H. Bader.

8. Evans Ridge Board of Directors comprises members of the Evans Ridge section of Northridge.  Its members include Juan Swann, whose address is 7402 Quixote Court, Bowie, MD 20715, Samaria Lett,  whose address is 7901 Quinta Court Bowie, MD 20720, Edna

Kane-Williams whose address is 7700 Quaint Court, Bowie, MD

20720, and Mark Flanegan of Northridge, Bowie, MD 20720.

9. Defendant Mrs. Krieger, has been an individual who maintains her

principle place of residence within the county and judicial district of

this court.  Mrs. Krieger's address is 12004 Quarum Place, Bowie, MD

20720.  Mrs. Krieger is an agent of Evans Ridge Homeowners

Association and/or D.H. Bader Management Company.

10. Defendant N & Z has sought to collect alleged consumer debt from

Defendant Plaintiff.  N & Z's address is 7226 Lee Deforest Dr.,

Columbia, MD.

11. N & Z does not have the mandatory collection agency license

required under Maryland law.  The resident agent for N & Z is

P. Michael Nagle at 7226 Lee DeForest Dr., #102, Columbia, MD

21046.

12. Linda S. Mericle, P.A. is a law firm.  The principal place of business

for the firm is 7600 Hanover Parkway, #202,   Greenbelt,

MD 20770.  The resident agent for Linda S. Mericle, P.A. is Linda S.

Mericle.  This firm does not have the mandatory collection agency

license required under Maryland law.

13. The City of Bowie is located in Prince George's County, MD and is

subject to the jurisdiction of this court.

The City of Bowie's principle office is located at 15901 Excalibur

Road, Bowie, MD 20716.   The City Manager is David S.

Deutch.

14. Sergeant Rodriguez is a member of the police force for the City of
Bowie.

15. Liberty Landscaping, L.L.C. is located in Towson, MD and is
subject to the jurisdiction of this court.

The principle office for Liberty Landscaping, L.L.C. is located 409
Washington Ave., #314 Towson, MD 21204.  The resident agent is
Daniel V. Schmitt, 409 Washington Avenue, #314 Towson, MD
21204.

16. Many unknown defendants are Bowie City workers.

17. Many unknown defendants live in the Northridge Community.

At least three (3) live on Quill Point Drive in townhouses.

One drives a gold compact car bearing Maryland tag number MER
047, his neighbor a few door down drives an E Class
bearing Maryland tag number 1 AX 6853 who parked on the side of
Ms. Brown's house for an extended period of time prompting her
to call 911 and a third individual  drives a red convertible Cadillac.
Upon Information and belief the latter individual  may be employed
at the Prince George's County Sheriff's Office. Ms. Brown
confronted the former defendant who admitted that he is working
for the homeowners association  Another resident is a woman who
drives a silver Audi bearing MD  tag number ECD 554 who has
parked on the side of the road near the Clubhouse when the gang

was congregating to execute yet another plan to cut off Ms. Brown's

electricity. Still another resident lives on Quiet Owl and

drives a blue Charger with a large white stripe down the middle of

body of the entire car. This driver has parked by Ms. Brown's mail

box and revved his engine loudly. This was a Sunday afternoon

when a truck from Florida was wrapped with the name "Hot Buttered

Nuggets" was in the Clubhouse parking lot. The driver was peering

at Ms. Brown who was parked on the street. Ms. Brown called 911.

There is also a gold colored van which frequents the Clubhouse

parking lot apparently looking for Ms. Brown. It is believed that this

individual lives in the "lake" area of Northridge.

All of the above named residents of Northridge are unknown

defendants in this matter.

18.   Unknown individuals have carried out activities in Prince George's

County. Specific whereabouts of these individuals are unknown.

19.   Baltimore Gas and Electric Company (BGE) is part of the

Constellation Energy Group. The registered agents are listed as

Bernard C. Treshler, Edward A. Crooke, BGE, Charles Center, P.O.

Box 1475 Baltimore, MD 21203. BGE is joined as party to this

Complaint pursuant to FRCP 20(a)(2)(A) and (B).

20.   Plaintiff does not have a contract with the named and/or unnamed

defendants with the exception of an implied contract with defendant

BGE.

21. Evans Ridge Homeowners Association has not alleged any facts to support a tort action against Ms. Brown in its small claims case.

22. Unknown defendants have participated in illegal surveillance of Ms. Brown and the illegal tracking of her person by tracing Ms. Brown's mobile phone.

23. Unknown defendants have hacked Ms. Brown's computers and synchronize their computer with Ms. Brown's as they interfere with Ms. Brown's applications by typing as she types, and points out items of their interests, and "bump" screens they do not want Ms. Brown to view.  On the morning of April 8, 2014 Ms. Brown attempted to view her bank account on line.  She changed her username and pass code at the bank since the illegal onlookers by-passed the sign in screen whereby causing Ms. Brown's entry of her password to be printed on a blank screen that was in clear view. Ms. Brown was able to access her account at home on the evening of April 7, 2014; however, the next morning she was unable access her account as an unauthorized message appeared stating "the information provided does not match our records".  This message did not come from the bank.

Also, when Ms. Brown was reviewing one of her websites of choice, a second user was signed in on Ms. Brown's computer pointing several times to a FOREX advertisement.  From listening to Ms. Brown's phone conversations these

individuals are aware that Ms. Brown will be taking a FOREX class next week.  Upon information and belief this is when the perpetrators are planning their attack to break into Ms. Brown's garage in attempt to steal a car.

24. Unknown defendants have copied Ms. Brown's hard drives on Ms. Brown's computers.

25. Unknown defendants have stalked Ms. Brown and traced her by mobile phone signal.

Venue

26. Venue for this action is established by real property which is within the jurisdiction of this court under the ground, *inter alia*, that one or more of the defendants resides within Prince George's County.

### Factual Allegations

27. Plaintiff seeks damages for defendants' unlawful practices.

28. Defendants Evans Ridge Homeowners Association and D.H. Bader Management Company, through N & Z, filed liens against Ms. Brown's property located at 7700 Quill Point Drive, Bowie, for alleged violations of the association bylaws.

29. Ms. Brown was never provided with the bylaws for the Evans Ridge Homeowners Association.  The Maryland Homeowner's Association Act provides that bylaws are to be provided to a prospective owner prior to entering the contract of sale of the realty.

30. Defendant Evans Ridge Homeowner's Association through D.H

Bader Management filed liens against Ms. Brown's property located at 7700 Quill Point Drive, Bowie, MD without proper notice as required by Maryland law.

31. Defendants Evans Ridge Homeowner's Association and D. H. Bader Management filed a lien against Ms. Brown's property in the amount of $2,000 for allegedly having a trash can situated at or near her garage on the side of her house. At or near this time a letter was sent to the residents of the Northridge Community stating that $2,000 was needed to repair the neighborhood waterfall. At the time of this writing said waterfall remains inoperable.

32. Defendant Evans Ridge Homeowners Association filed a second lien against Ms. Brown's property for allegedly having enclosed said trash can with a white barricade and have sued her for having this barricade for $1,045 plus expenses (case number 050200260962011 in Prince George's County District Court). This is based on an unsigned letter from D. H. Bader Management Company (Bader).  Exhibit 1 There is a homeowner in Ms. Brown's section of Northridge that has a white barricade on the side of their house. The barricade has been there for several years.  It is of no moment that they have a white barricade on the side of their house.  EXHIBIT 2

33. Jose O. Cruz was sued by Evans Ridge
   Association, Inc. in Prince George's County District Court (case
   number 050200186922010).  The case was dismissed pursuant to
   Rule 3-507 for failure to prosecute.  <u>Exhibit 3</u>

34. Ms. Brown's case remains open even though her case is
   similar to Mr. Cruz's.

35. Mr. Cruz's case is labeled as a "contract" action as opposed to
   Ms. Brown's case that is labeled as a "tort" action.  <u>Exhibit 4</u>
   <u>(docket of Ms. Brown's case 050200186922010)</u>

36. Defendants filed an affidavit from a Timothy J. Keifline.
   He states in his affidavit of 2013 that "defendant has ran [sic]
   from me".  <u>Exhibit 5</u>   One night in February 2012, Ms. Brown
   noticed her blue recycling bin placed in the middle of the edge
   her driveway.  A blue BMW sped out of the Clubhouse parking lot
   and stopped suddenly at Ms. Brown's driveway.  Ms. Brown did
   not recognize the car.  A man got out of the car and headed
   toward Ms. Brown and did not say anything.  Ms. Brown
   reentered her home through her garage.  The man hit the garage
   door, apparently with his fists, which was evident by the loud
   sound that was heard by Ms. Brown.  The door malfunctioned
   after this incident which cost Ms. Brown $400 to repair.  It was
   dark, Ms. Brown did not know the man who did not identify
   himself and  Ms. Brown had been forewarned about possible

kidnap activity;  therefore she retreated to safety.  Further there was no message left.  This is the only person Ms. Brown has run from.   The statement that was written by Mr. Keifline was in July 2013 which is two years past the time the case was filed.

Ms. Brown's case was subject to dismissal in 2012.

37.  With respect to the garbage can, it is common practice for the residents in Ms. Brown's area to house their trash bins by their houses.  It is of no moment that they engage in this activity; however, a $2,000 lien was placed against Ms. Brown's property when she was accused of the same activity.  Exhibit 6 (a-l)

38.  Upon information and belief there is a writ of attachment circulating for a vehicle that is non-party property.

The vehicle is worth much more that the amount claimed in the small claim against Ms. Brown in Prince George's County Court. Pre-judgment attachments are permitted by Rule 3-115, *inter alia*; however, it does not mean the Plaintiffs get a free car as they opine.

39. Defendants Evans Ridge Homeowner's Association and D.H. Bader  Management Company applied disparate standards against Ms. Brown in imposing the two (2) liens as described above as there are several homes in the Northridge Community with trash cans housed near the  garages as shown in EXIHIBIT 6 above.  Upon information and belief liens have not

been assessed against those properties as described above.

40. The liens assessed against Ms. Brown's property are grossly
disproportionate with respect to other liens filed by the Evans
Ridge Homeowner's Association that average less that about
$300 per lien as reported by Maryland Judiciary Case Search.

41. The disparate standard in imposing liens against Ms. Brown
violates her Constitutionally protected rights.

42 .Evans Ridge Homeowners filed suit in the District Court of
Maryland for Prince George's County against Ms. Brown for
the amount of $1,045.00 plus fees and expenses on July 15,
2011.  The Complaint was filed by N & Z.

Ms. Brown sent a letter to N & Z requesting verification of the
debt in response to a letter it sent her on July 17, 2013
alleging that Ms. Brown owed Northridge Recreational Inc.
$1,202.25.  The debt was not verified.  This appears to be a
different alleged debt than the one complained of here.
Nonetheless the debt referenced was not verified and N & Z
sued Ms. Brown for $1045.00 plus expenses in 2011.  EXHIBIT 7
(letter and confirmation of receipt by the USPS)

43.Subsequently Linda Mericle, P.A. (Mericle) entered her firm's
appearance in the small claims matter replacing N & Z,

44. N&Z acts as a "collection agency" as defined by the Maryland
Collection Agency Licensing Act (MCALA), Md. Code

Ann. Bus. Reg.  §§ 7-101 *et. seq.*

45. N & Z is required by MCALA to be licensed as a collection agency.

46. N & Z does not possess the required license to engage in collection practice such as the activity in attempt to collect an alleged debt from Ms. Brown.

47. N & Z is a "debt collector" as defined by the Fair Debt Collection Practices Act (FDPCA)15 U.S.C. § U.S.C. 1692a(6) has not verified any amount allegedly owed by Ms. Brown to the Evans Ridge Homeowner's Association as required by the FDPCA.

48. Likewise, Mericle is required to be licensed as a collection agency and does not possess any such license.

49. Defendant Mrs. Krieger has illegally surveilled Ms. Brown and her property by parking in the clubhouse parking lot across the street from Ms. Brown's home in Mrs. Krieger's white Toyota van.  On numerous occasions Ms. Brown observed Mrs. Krieger parked in the described fashion often taking copious notes.  On one occasion Ms. Brown approached Mrs. Krieger to ask Mrs. Krieger if she worked for the homeowners association.  Mrs. Krieger replied "no" whereupon Ms. Brown asked Mrs. Krieger why she frequently parked in the clubhouse lot across the street from Ms. Brown's house and Mrs. Krieger

replied that she did not want to wake "her baby".  Attached are

seven (7) photos of Mrs. Krieger parked across the street from

Ms. Brown's house on numerous occasions.  <u>EXHIBIT 8</u>

50. Recently, Mrs. Krieger has been parking on the wrong side of

the road in the mornings where a clear view of the front

of Ms. Brown's house may be observed.  Ms. Brown first

noticed Mrs. Krieger parking in this fashion on the morning

of January 9, 2014.  <u>EXHIBIT 9</u>

51. Ms. Brown's yard has been "marked" on several occasions

with trash, clothing, rocks, and bags in the trees.


## <u>FACTUAL ALLEGATIONS (Illegal Activity)</u>

52. Illegal activity against Ms. Brown in this matter includes but

is not limited to:  unlawful surveillance, attaching electronic devices to her

house, triangulating her cell phone(s), sending fire trucks and police

vehicles to locate Ms. Brown by her cell phone signals, attempting to cut

off Ms. Brown's electric utility, eavesdropping on all of her telephone

conversations, trespassing on her property, parking at or near Ms. Brown's

house on a daily basis, attempting to steal non-party property from Ms.

Brown, unauthorized synchronizing of her computers, sending unofficial

advertisements to websites Ms. Brown visits, tampering with Ms. Brown's

e-mails by deleting them completely and sending links to thwart the

operation of  Ms. Brown's computers, downloading Ms. Brown's hard

drives, remote tampering with Ms. Brown's iphone sending unofficial

messages such as "change carrier settings now" and "photostream

unavailable". Ms. Brown consulted with a private detective who explained

to Ms. Brown that clicking on any of these messages whether "yes" or

"no" allows the sender to alter her iphone. Ms. Brown has noticed photos

missing from her iphone(s). There are black and blue boxes on Ms.

Brown's iphone(s) which indicate where photos have been removed.

Further Ms. Brown's banking information has been accessed and has been

interfered with. At least one electronic payment was delayed through

unknown defendants' communication with the payment source. Also, text

messages from unknown individuals are sent to Ms. Brown which enables

the sender to read Ms. Brown's text messages.   Ms. Brown receives phone

calls everyday from numbers that she cannot call back to speak to

someone.  Upon information and belief these calls are designed to attempt

to locate Ms. Brown. Ms. Brown has received such calls from: +1(949) 441-

5568, 1(848) 459-4922, +1 (202)499-2930,  1(614)516-0459, 1(202)223-2906,

1(800)583-1684, +1(305) 590-8186, +(202) 499-2951, (410) 961-7403,

+000000000024594....,1(484)589-5642, 1(800) 399-2019, +1(617) 581-1062,

240-715-8114, 410-494-7777, (301) 188-2222, +30 14711349, +61 9 8810 575,

+30 15890278, +7 198-13-84, 50371981384, +503 5037198134, +1(949) 441-

5568, (302) 357-3434, 855-2, (301) 531-0855, 1(202) 719-6480, +86 644-11957,

1(202) 594-3079, 1(202)684-8867, (202)715-6835, 1(202)459-4297, +1

(310)299-0046, 1(202) 888-9259, 1 (765) 313-4020, + (201) 225-4100, 1 (202)

415-4705, 1(991)1552-8743, 1 (240)-305-9458, +1 (888) 351-0703, 1(757) 572-

4501, 1(651) 687-7000, (202) 415-2728, 77718883510703, 1(516)656-4127,

+1(240) 210-9229, +1 (813) 252-2497, 1(813) 324-6619, 1(813) 305-7904, +30

11949156, +1 (877) 920-9000, 1 (240) 353-6226, 1(202) 719-5129, 1(202) 415-

6486, +1(805) 637-7243, 1(667) 206-0411, 1 (202) 531-8258, +501, 1(240) 348-

1005, +(214) 740-1523, +1 (209) 207-5391, 240-715-8289, 240-715-2125, 800-

214-5291, 1(240) 381-5165 (listed to John Detwiler Bowers), and 1(202) 415-

0639. There are many numbers like these which place calls to Ms. Brown.

Often when one of these calls is placed a contractor will appear in the

Clubhouse area within thirty (30) minutes.

53.  On February 6, 2014 Freddie Jacobs of Northridge call

her to "check on her".  Most of the conversation entailed the problems Ms.

Brown is experiencing in the community. He brought up the subject of the

would be stolen car and stated several times that he saw her driving it.

Shortly after said conversation concluded Bowie squad car number 43

drove by Ms. Brown's house.  Shortly after that a text was sent to Ms.

Brown from  "+ (240) 305-9458" stating "Numbers that appear "normal" are

all numbers that have been complained of by other recipients to calls from

these numbers as reported by internet "who called me" websites.

 54. City of Bowie employees have participated in harassing Ms. Brown by

appearing at or near her home for no justified reason.  On several

occasions City of Bowie employees park in the Northridge Clubhouse

(Clubhouse) and sit idly for long periods of time without performing any

work.  Ms. Brown has also witnessed City of Bowie employees parked near the Clubhouse dumpster, that has been fairly recently moved to a location which aligns the dumpster with a window at Ms. Brown's house.  The employees look in the direction of the window in attempt to ascertain whether or not Ms. Brown is at home.

55. One Friday when it snowed in January 2014 Ms. Brown was on her way to work when she noticed a Bowie  squad car in the parking lot across from her house and a man wandering the parking lot on foot. Ms. Brown drove over to the walker and asked was he was doing. He responded "I clean." Ms. Brown then drove over to the squad car and asked the officer what was going on.  He said he was policing the area because the community hired the Bowie police to do so. When asked he identified himself as "Officer Matthew".   Ms. Brown explained to Officer Matthew that she believed that the Bowie police have a plan to turn off her electricity and steal a vehicle they believe is in her garage.  Officer Matthew replied emphatically "yeah".  Ms. Brown asked Officer Matthew if he was aware of this plan and he just smiled. The walker jumped in his black SUV and drove off while Ms. Brown was speaking to the officer.  He was wearing a blue shirt with the name "MINKOFF" on it.  He later returned that afternoon in a white unmarked step van with tag number BH06271 and MDA 28154 printed on the body of the truck.  Because of incidents such as this one, Ms. Brown could not
     continue working that particular job.

56  On or about Wednesday, January 8, 2014 two Latinos

were in the Clubhouse parking lot in an unmarked gray

truck.  Ms. Brown asked who they were and why they were there.

One of the men replied that they were from "Liberty" which is the

landscaping company that Northridge hires. He further stated that

their boss "Jim" wanted a big tree cut.  Ms. Brown did not see any

trees cut that day in Northridge.

57. On Augustt 14, 2013 Ms. Brown observed a vehicle with license plate

number 9 A/V 0636 in the Clubhouse  parking lot  parked near the

dumpster aligned with a window at her house.

58. One Friday Ms. Brown observed a burgundy Porsche

Cayenne parked on Fletchertown Road in front of Ms. Brown's house.

The driver, a black female, was serving as a lookout for a black male

who parked a BGE Home utility truck on Fletchertown Road.  The man

was walking in the area where he parked about 1 mile down from Ms.

Brown's house. An extended neighbor of Ms. Brown conveyed to Ms.

Brown that the young man had been in the area all day doing nothing.

He had a tool in his hand.  When Ms. Brown returned home later the

same man had walked within a block of Ms. Brown's home with the

aforementioned tool in his hand.  When he saw Ms. Brown the man

retreated.

59.On a warm Sunday in February, Ms. Brown observed the same woman

who drives the Porsche Cayenne, mentioned above parked on  the side of

exit ramp off route 450 which leads to route 564. She was

seated on the driver's side of a black Jeep Grand Cherokee. When

Ms. Brown made eye contact with the woman she rolled up the driver's

side window. Upon information and belief the woman lives in the

Northridge Community on Quinto Court.

60. A blue cab was parked on Fletchertown Road for several weeks during

the winter of 2013 in front of Ms. Brown's house. When Ms. Brown e-

mailed Mr. Bader of Bader management for assistance he replied "call

the county". Ms. Brown also contacted Chief Nesky of the Bowie Police

by e-mail and did not receive a substantive response. Ms. Brown called

911, 311, and 301-352-1200 repeatedly daily until the cab was moved.

Then a red cab appeared in its place. Ms. Brown repeated calling 911, 311,

and 301-352-1200 daily until the red cab was moved. The day the red cab

was moved Officer Moton of the Bowie police called Ms. Brown and left her

a message stating that the cab was disabled and that the police would have

to allow the driver a day or two to get the cab repaired. Shortly after the

message was received by Ms. Brown, the driver of the red cab moved the

car when a tow sticker was placed on the vehicle. Ms. Brown observed a

county policeman place a paper on the vehicle. In speaking to Officer

Moss of the Bowie police who responded to Ms. Brown's 911 call on or

about Saturday March 15, 2014 Officer Moss explained that she placed an

orange tow sticker on the cab the day it was towed.

61. Ms. Brown has observed at least three (3) check points apparently designed to see if she is driving the car that the people of Northridge seek to snatch.  There was also a county policeman stationed on Prospect Hill Road with a device that collects tag numbers attached to his car.  He was stationed at that location for a few weeks.

62. On or about Sunday January 15, 2014 a gold colored Chevrolet was in the Clubhouse parking lot at the dumpster that was moved in alignment with a window at Ms. Brown's house.  Ms. Brown called 911 and made a report. The Chevrolet pulled off while Ms. Brown was in conference with the 911 operator.

63. On or about Wednesday January 15, 2014 at 11:00 a.m. a burgundy Hyundai station wagon with tag number 1 B/C 1213 MD plates with an expiration date of 5/15 was parked in the parking Clubhouse parking  lot. Later on that day a black Ford SUV with Maryland plates 7 B/E 5589 was also parked in the Clubhouse parking lot.  When Ms. Brown called 911 each car left the parking lot while the 911 call was in progress.

64.  On or about Friday January 17, 2014 at 9:25 a.m. a dark blue Ford Edge bearing tag number 593 WMM was parked in  the Clubhouse parking lot. When Ms. Brown called 911 said car left the parking lot while the call was in progress.

65. On or about Sunday January 19, 2014 three (3) Bowie police officers were in the Clubhouse parking lot at 6 p.m.   Prior to the formation of the trio, Ms. Brown heard short burst of siren sounds as if they were signals.

Ms. Brown spoke to Ms. Rice at 301-352-1200 who confirmed that no calls had been made to the Northridge area that day. The police left when Ms. Brown commenced a conversation on the phone to a friend whose wife was dying.

66. On or about January 20, 2013 a white man was observed by Ms. Brown in a silver car. He was parked at her mailbox with a tow truck behind him.

67. On or about Friday March 14, 2014 Ms. Brown observed a gray Mazda parked across the street from her house at the clubhouse at the dumpster in a gray Mazda. He was feigning a vehicle lockout. Ms. Brown called 911, while the call was in progress, the man opened the door of his vehicle, entered his vehicle and pulled off.

68. On or about Saturday March 15, 2015 two (2) cars parked in the Clubhouse parking lot near the tennis court. A paunchy black man about 6' with a full beard a dark hair was walking a small dog in the Clubhouse parking lot in the rain. He was walking the dog back and forth in a T formation pattern. The man was talking on a phone that appeared to be a black iphone as if he was speaking on the speaker phone which is the same fashion that most of those lingering in the parking lot speak on the phone. Ms. Brown asked him how much he was paid "for this" meaning to act as a lookout. He said "they pay me enough". When Ms. Brown asked him his name he said "Rick Jackson".

69. On Wednesday, March 19, 2014 three pick up trucks (3) arrived at about 9:00 a.m. with "Liberty Landscaping"

printed on each truck.  The foreman, a white man with blonde hair "Jim" was serving as a lookout for Twin River, a professional underground electric service company from Virginia that was in the Clubhouse parking lot attempting to cut off  Ms. Brown's electric utility.  Ms. Brown observed the Twin River workers and began taking pictures with her iphone.   Messages began to pop on Ms. Brown's iphone to prevent her from taking photos.   However Ms. Brown was able to take two (2) pictures of the truck after the workers rolled down the rear door of the truck.  The truck then drove in a direction away from the exit from the community.  <u>EXHIBIT 10</u>   Ms. Brown promptly called Twin River and did not receive an explanation as to why the company was on the residential grounds of Northridge. Twin River is not affiliated with BGE.

That evening the Evans Ridge Board of Directors had a meeting at About 7:30 p.m. that night; it was dark.  They always meet when a plan fails to disrupt Ms. Brown's electric utility.

70. On another occasion the Liberty landscape workers arrived in the Clubhouse parking lot and started cutting limbs from trees in rain. They waited all day apparently to seek an opportunity for someone to disable Ms. Brown's electric service from the electric box by the Clubhouse (box number 30047).

About three (3) weeks ago City of Bowie workers were cutting on one tree in Ms. Brown's yard for about an hour.  Ms. Brown stepped

outside to tell them to leave.  A tall white man with a mask pointed and started to walk toward Ms. Brown whereupon Ms. Brown retreated to her house, called the City of Bowie and spoke to Mr. Kelner who said they were his men.   When Ms. Brown asked Mr. Kelner if he would contact the men and have them leave her property he initially refused.   Then Mr. Kelner said he would contact the men and have them to leave. They sat parked in front of Ms.  Brown's house for about ten (10) minutes. The men did not leave the area until Ms. Brown called 301- 352-1200. EXHIBIT 11 (photos of Ms. Brown's tree hacked by Bowie City workers).

71. A young man that frequents the Clubhouse parking lot who reportedly works for  contractor Dan Devine came to the parking lot after Ms. Brown checked the Clubhouse door to insure it was locked and checked the lock box to be sure it was secure since on one occasion the door was unlocked when no one was in building and there was a car parked in the Clubhouse parking lot without anyone in it.  Shortly after Ms. Brown checked the clubhouse for security purposes the young man drove to the Clubhouse in Dan Devine's gray truck and punched in buttons on the lockbox but did not open the door.  It appeared that someone called him to the area to punch in the numbers in the lock box.

72. On or about Thursday March 20, 2014, Ms. Brown observed Mrs. Krieger parked on the wrong side of the road facing

Ms. Brown's house as appears in EXIHIBIT 8.  There was a service man at Ms. Brown's house performing some work. The same gray Mazda in ¶ 66 above drove to the Clubhouse parking lot and parked at the dumpster in the same fashion as the morning of March 14, 2014.  The man got out of his car.  Ms. Brown asked the man if he was a policeman as he was wearing a blue uniform.  He responded that he is a Prince George's County fireman.  He said he lives In Northridge across Fletchertown Road.  When Ms. Brown made inquiry as to why the man was in the parking lot parked by the dumpster he became agitated and drove off.  The tag number on the gray Mazda is IF 1548.  He drove in the direction of Mrs. Krieger who then followed the man down Quadrille Lane.  While Ms. Brown was talking to the fireman several messages kept popping up on her concerning signing in to "the cloud" and that "photostream could not be accessed".  Upon speaking with an Apple representative these are not official messages from Apple.  These messages pop up frequently on Ms. Brown's iphone especially when she is in the area of the Clubhouse.

73.  On another occasion, Ms. Brown approached a gold car that was parked in the Clubhouse parking lot for about a half hour.  Ms. Brown recognized the vehicle which she sees frequently.  The tag number on the car is "MER 047.

 The driver lives in a townhouse in the Northridge community.  Ms.

Brown approached the man and asked why he was doing this to her and asked if the homeowner's association put him up to his activity, whereupon the man responded affirmatively by nodding his head and pointed the phone in Ms. Brown's direction and said "talking now".

74. The Bowie police officer identified to Ms. Brown as "Sergeant Rodriguez" has been in the Clubhouse parking lot across the street from Ms. Brown's house on many occasions.

Ms. Brown witnessed him in said parking lot with a BGE electrician after she experienced a service disruption. Ms. Brown's power was restored when she made a phone call. She then went outside and saw Sergeant Rodriguez with a BGE electrician in a large truck equipped with a boom. Ms. Brown called 911 and the two (2) men immediately fled the parking lot. Ms. Brown became aware of Sergeant Rodriguez's identity when she inquired due to an incident the morning of February 4, 2014. Later that day at about 10 a.m., after Sergeant Rodriguez left Ms. Brown a flatbed truck carrying a bulldozer in the parking lot across the street. When Ms. Brown went to investigate, the truck pulled off before she drove out of her garage. Ms. Brown then drove around the block. When she returned home the Bowie SUV that Sergeant Rodriguez usually drives was in transit near Ms. Brown's home.

At about midnight on February 4, 2014, Ms. Brown heard a noise around the garage area of her house. She looked out the window and saw a Bowie squad SUV traveling south on Fletchertown Road passing

by Quill Point Drive.  A few minutes later the same SUV was parked in the clubhouse parking lot on Quill Point Drive.  Ms. Brown called 311. Ms. Brown had asked if any calls for assisstance had been made to her community.  The operator responded in the negative.  Ms. Brown then called the City of Bowie Police to ask why the Bowie squad SUV was parked across the street from her house when there were no calls in the area.  Officer Hernandez called Ms. Brown and explained that he would have to come to the area to see who was there.  At this time the SUV had been parked in said parking lot for over an hour.  Twenty minutes later Ms. Brown called the non-emergency number and explained to the operator that Officer Hernandez had not called her back to identify the officer across the street.  As soon as Ms. Brown made this statement, Officer Hernandez called Ms. Brown.  Ms. Brown had to ask Officer Hernandez at least three (3) times the name of the officer in parking lot parked across street from her.  Officer Hernandez finally stated that it was Sergeant Rodriguez; however would not provide his first name.

75. On previous occasions the following events occurred on separate days: (a) three large BGE trucks parked across the street from Ms. Brown's house, (b) four large BGE trucks parked across the street from Ms. Brown's house, (c) a BGE gas truck parked down the street from her house  (Northridge uses Washington Gas), and (4) Ms. Brown noticed a BGE truck parked on route 193 on a clear day with no  evidence of an

electrical problem in sight and there were no electric wires where the BGE truck was parked.  The truck did not display a rear tag.  When Ms. Brown called BGE, the driver of the truck without the rear license plate fled to the Industrial Park on route 193 while she was making the call.  Upon each event as described Ms. Brown called BGE and asked why their personnel was in the locations as described.  Each time Ms. Brown made this inquiry she was informed that no work was scheduled in the area nor were there any emergencies. In each instance the trucks disappeared while Ms. Brown's calls were in progress.

76. Also, there have been several Verizon trucks and Comcast trucks parked at or near Ms. Brown's house.   Ms. Brown does not subscribe to service from either company.

77. Another day Sergeant Rodriguez was parked across the street from Ms. Brown's home in the clubhouse parking a lot. A Verizon truck was parked down the street from Ms. Brown sitting idly which is uncommon.

Ms. Brown spoke to the gentleman in the truck who said he just "finished a job".   When Ms. Brown called Verizon to investigate this information both Sergeant Rodriguez and the Verizon worker immediately fled the area.

78. Ms. Brown also observed Sgt. Rodriguez one day at the Clubhouse with a man who lives on Quill Point Drive.  They had children with them. When the letter carrier pulled up in the mail truck Sgt. Rodriguez and his acquaintance drove off the parking lot.  Ms. Brown remained in the area.

Sgt. Rodriguez then parked on Fletchertown Road.  Ms. Brown observed him for about fifteen (15) minutes then Sgt. Rodriguez drove back to the Clubhouse, parked and deposited some paperwork in the mail slot at the Clubhouse.

79. Several other trucks have been in the area and leave when Ms. Brown calls 911.  The businesses identified on vehicle include Apogee Trucking L.L.C., Cropp Metcalf, Washington Gas, Jordan Kitts, Miss Utility and several other companies. Many civilians and residents of Northridge have served and are serving as look outs for Ms. Brown's whereabouts.  The most prominent resident lookout is Mrs. Alyssa Robin Wolf Krieger (Mrs. Krieger).  Ms. Krieger has sat in the parking lot across the street from Ms. Brown in the clubhouse parking lot taking copious notes and has done so many days for over a year.   Ms. Brown even witnessed Mrs. Krieger directing a Comcast (or Verizon) boom truck operator to the parking lot across the street from Ms. Brown's house.  Mrs. Krieger looked at the truck driver and pointed vigorously at Ms. Brown's house.  Ms. Brown noticed this same truck driver in his work truck parked behind Lowe's in Howard County.  When the driver made eye contact with Ms. Brown he immediately started his truck and drove off.   About 25 yards behind the Verizon truck there was a man with a walkie talkie device that was speaking into the device vigorously when he saw Ms. Brown.  Across the street from the shopping center a BGE utility van was parked at the far end of the parking lot of a convenience store.

80. Ms. Brown received a letter from Adobe Acrobat stating that security had been breached and "an unauthorized third party illegally accessed  certain customer order information [about you]".

81. Some of Ms. Brown's e-mails have been deleted completely from her computer. These are e-mails that she had previously viewed that can no longer be found on her computer.  Ms. Brown completed an employment application, as soon as she finished, the document was being downloaded by someone else.  Some of Ms. Brown's online documentation has also been manipulated.  Further Ms. Brown has received e-mails from jreasor@aol.com from the Parts Authority. One of the e-mails was advertising a portable electric generator with a message typed in reading "you never know".

82. Ms. Brown has also received certain advertisements in her popular websites when she has taken some sort of action against what is happening to her.   When Ms. Brown initially complained about the first cab that was illegally parked on Fletrchertown Road an advertisement  popped up stating "may you rest in peace" under the guise of promoting life insurance for $21.00 per month.  This advertisement appears a lot when Ms. Brown complains about the events described in this Complaint.

83. In the winter of 2012 gunshots were fired in the wee hours of the morning which where heard by many other residents

in the area. Ms. Brown noticed that these events were always timed with the complaints she filed to various agencies.

84. When Ms. Brown informed some neighbors that Ms. Brown complained until the cab was gone, they were grateful. Ms. Brown did not get the same type of response from Chief Nesky of the Bowie police nor from Mr. Bader of Bader management.

85. Fairly, recently, Ms. Brown complained to Mr. Bader of D.H. Bader management via e-mail concerning the fact that the dumpster in the clubhouse parking lot had been moved to a position that is aligned with a window on the side of her house. Ms. Brown expressed safety issues concerning the current position of the dumpster as the henchmen who are harassing Ms. Brown park near the dumpster and/or hide behind it.  Mr. Bader dismissed Ms. Brown's complaint by stating that the dumpster had been in the same spot for years and that Ms. Brown is welcome attend the Board of Directors meeting on February 26, 2014 to discuss the issue.

86. One prominent member of the community expressed to Ms. Brown that the Board of Directors will not approve surveillance cameras in the parking lot where the clubhouse is located.  Upon information and belief, surveillance cameras are secreted in the Northridge Clubhouse.

87. On February 5, 2014 Ms. Brown noticed a service vehicle parked in a driveway of a neighboring house.  The front of the

service vehicle was pointed directly at Ms. Brown's house.  When

Ms. Brown stepped away from the window, the service

vehicle pulled off.

88. On or about July 28, 2013 at about 8:30 a.m. there was a man

parked across the street at the Clubhouse in a gray Cadillac.  He got

out and stood behind the car with the trunk lid up hiding the rear

tag.  There was no front tag on the car.  Another man was pacing

back and forth near the electrical box on the Clubhouse lot.  A large

box truck from Apogee Trucking L.L.C. was driving up and down

Quill Point Drive near Ms. Brown's home.  Ms. Brown called 911 at

least three times that morning because of this highly unusual

activity.  Officer Williams of the Prince George's County

Police Department (#3679) responded to the call. When the officer

arrived a man with a swarthy white complexion appeared in a

cashmere coat walking four small dogs.  He was about 5' in height

with a medium build. He had a moustache and black hair.

Ms. Brown did not recognize this man from the community.

Officer Williams remained in the Clubhouse parking lot until the

group dispersed and she pursued the first man that was walking.

89. There are several more similar events as those described above.

Almost everyday someone follows Ms. Brown and there are

individuals parked on the side of the roads Ms. Brown travels with

their engine running and pull off when they see Ms. Brown.

### BGE

90. BGE serviced the electric utility in Ms. Brown's family home in Annapolis for several years in the name of Ms. Brown's father.

91. In 2003 Ms. Brown bought property in Baltimore, MD for rental purposes to establish Ms. Brown's personal retirement plan. Ms. Brown is 57 years old.

92. Ms. Brown recalls that she subscribed to electric service only from BGE for two (2) properties. Each time Ms. Brown was required to pay a deposit to BGE.

93. On or about two (2) occasions tenants of Ms. Brown defaulted on their payments to BGE and moved from the property they occupied that Ms. Brown owned. Subsequently BGE took the deposits from other properties Ms. Brown owned and explained to her that it was taking the money to pay bills owed on other property that Ms. Brown did not occupy.

94. When Ms. Brown moved to Bowie, MD she called Washington Gas to place gas service in her name and the company complied. Ms. Brown then called Pepco to service her electric utility and was informed that BGE serviced her area.

95. Ms. Brown then contacted BGE and placed the electric service in her mother's name as Mrs. Brown (Plaintiff's mother) was not required to pay a deposit for the electric service in the Northridge home.

96. Ms. Brown (Plaintiff) paid BGE monthly from a joint bank account with her mother on a budget plan. The monthly   payments were about $300 per month for electricity alone on the budget plan for the Northridge home.

97. Ms. Brown opted for the budget plan to insure that her utilities were paid.  At that time her mother was on oxygen combustor that ran by electricity 24-7.

98. When the account was overpaid about $1,700, Ms. Brown wrote notes on the bills explaining to apply any over payment to the amount due on the monthly bills.

99. Ms. Brown did not pay the bill for about two (2) months since her account was overpaid.

100. BGE then sent Ms. Brown a cut-off notice for the Bowie home even though the account was well overpaid.

101. Ms. Brown then wrote to BGE explaining that the account was overpaid and that cut-off was inappropriate. Ms. Brown commenced the complaint process with the Office of the People's Counsel.

102. BGE continued electric service at the Bowie home.

103. Ms. Brown and her mother had a tenant in the home in Annapolis.

Ms. Brown's mother passed in 2006.

104. Ms. Brown informed BGE about the death of her mother and

asked that the bill in Bowie, MD be placed in her name only. BGE asked for Ms. Brown's mother's death certificate. Ms. Brown complied and sent it to BGE as well as Letters of Administration concerning her mother's estate. Ms. Brown did not receive any bilinh statement from BGE. The status of the account in Ms. Brown's mother's name was still overpaid for the Bowie home.

105. A man from BGE who identified himself as "Mr. Little" called Ms. Brown months after her mother passed and explained to Ms. Brown that the tenant in Annapolis had an outstanding electric bill. Ms. Brown explained that neither she or her mother received any bill from the Annapolis home and that service from the Annapolis home was in the tenant's name. Ms. Brown also explained to Mr. Little that she was not receiving a bill at her Bowie home. Mr. Little advised Ms. Brown to fax her mother's death certificate to him. Ms. Brown faxed a copy of her mother's death certificate to Mr. Little as well as the Letters of Administration. After this conversation, Ms. Brown experienced 2 (two) separate power outages at her Bowie home.  On each occasion, Ms. Brown called BGE to inquire about the separate outages. Each time Ms. Brown explained that she was not receiving any statement from BGE. Each time a representative explained "there is nothing wrong with the bill". Each time the power resumed within a short timeframe.

106. One afternoon, Ms. Brown came home and the power was off.  When Ms. Brown called BGE a representative who said that Ms. Brown she owed $3,000 which included the amount that was not paid for one (1) year for Annapolis property which Ms. Brown did not occupy.

107.  When Ms. Brown supplemented her written complaint, BGE wrote to Ms. Brown and stated that she owed an additional $3,000 for a property on Fulton Avenue in Baltimore.  Ms. Brown explained that a tenant occupied the property and sent the lease to BGE to support that statement. Whereupon BGE rejected Ms. Brown's evidence stating that the $3,000 accrued prior to the tenant's occupancy.  There was no electric or gas use at that location during Ms. Brown's company's ownership of the Fulton Avenue property prior to the tenant's occupancy.  Ms. Brown checked the property frequently as her father was admitted to a Baltimore hospital for an extended period.     Each time Ms. Brown visited the house there was no utility use at the property and no sign of break ins.  Ms. Brown has never received a bill for the Fulton Avenue property.  Ms. Brown did not use electric or gas service at the Fulton Avenue property.

108.  Ms. Brown's electricity was restored at her Bowie home.  She received two (2) bills over a (2) month period from BGE.  BGE placed Ms. Brown's name on the statements from her deceased mother's account and put the new use on the each statement .  Ms. Brown paid both bills (for the new use only) and the power was cut off again without notice.   Ms. Brown

added this event to her complaint.   Once again her power was restored at her Bowie home.

109.  One evening, a representative from Ms. Utility came to Ms. Brown's home with a BGE electrician with a boom truck. The representative from Ms. Utility spoke to Ms. Brown and asked if her electricity was on to which Ms. Brown responded "yes". The representative then went to the Miss Utility vehicle and wrote a lengthy report.

110. Case law has decided that an individual is not responsible for any utility use that the individual has not consumed. *Everett v. BGE et. al.* No. 56, September Term, 1985 Court of Appeals of Maryland, 307 Md. 286; 513 A.2d 882; 1986  Md.LEXIS 281.  Further *Everett* holds "Pending the ultimate resolution of a dispute concerning a proposed termination, the customer's service may not be terminated".

111.  Ms. Brown is not legally responsible for any bill at the Annapolis home or at the Fulton Avenue house in Baltimore.  Further Ms. Brown is not responsible for any bills in her deceased mother's name.  Ms. Brown informed BGE of her mother's death, and sent in two (2) death certificates and Letters of Administration to BGE whereupon BGE could have filed a claim.

112.  Ms Brown had been represented by private counsel and then contacted the Office of the People's Counsel which refused to represent her.  Ms. Brown spoke with an attorney who had been employed by the Office of the People's Counsel who informed Ms. Brown that the Office of

the People's Counsel was legally obligated to represent her regardless of economic status.

113. The law states that in the event a complaint is pending the service must continue at the consumer's home and a payment plan must be established for the amount allegedly owed.  The PSC rejected the law and told Ms. Brown informally she had to pay $6,000.  This statement has not been reduced to writing and Ms. Brown's complaint remains pending which Ms. Brown confirmed through the PSC about three (3) weeks ago.

114.  Ms. Brown asks this Court to exercise supplemental jurisdiction in this matter and decide her administrative complaint against BGE.

### Cause of Action

Plaintiff repeats and re-alleges by reference paragraphs one through one hundred fourteen and incorporates by reference paragraphs one thorough one hundred fourteen as if they were actually written right here:

Defendants' violations of the FDCPA include, but are not limited to the following:

a) harassment and abuse and criminal means to harm consumer's property;  § 1692 d and d(1)

b) unfair means to collect alleged debt § 1692 f

c) attempt to collect any amount not authorized by the agreement creating the debt or permitted by law § 1692 f(1).

d) failure to send the consumer a 30-day validation notice

within five days of the initial communication § 1692 g

e) failure to state right to dispute within 30 days § 1692 g(a)(1)

As a result of Defendants' violations of the FDCPA, Plaintiff

suffered actual damages which includes loss wages

and is also entitled to an award of statutory damages, costs,

and attorney's fees.

WHEREFORE, Plaintiff respectfully requests that judgment be

entered against Defendants for:

a) actual damages

   i. lost wages for job loss.

   ii. emotional distress.

b) statutory damages pursuant to 15 U.S.C. § 1692.

c) Costs and reasonable attorney's fees pursuant to 15 U.S.C.

   1692 (k).

d) enter judgment for violation of due process and civil rights

   for $10 million.

e) award punitive damages of $25 million

d) and equitable remedies as listed below:

   i. Allow Ms. Brown's property at 7700 Quill Point Drive,

Bowie, MD 20720 to secede from the Evans Ridge Homeowner's

association whereby allowing Ms. Brown to govern the property with

respect to all federal, state, and local rules and ordinances.

   ii. Order Evans Ridge to repay all monies Ms. Brown has
ever paid the association.

ii. Vacate any liens and/ or judgments charged against Ms. Brown in conjunction with the Northridge Community.

iii. Quash any writ(s) of attachment arising from any case that Evans Ridge has against any property associated with Ms. Brown.

iv. Order Evans Ridge Homeowners Association to install an automatic entry guard with card reader at the entrance of the clubhouse parking lot on Quill Point Drive.

v. Order Evans Ridge Homeowners Association to pay monthly rent to Ms. Brown for the use of her property where one of the community monuments is placed that Ms. Brown will maintain.

vi. Order BGE to disable the wiring at electrical box number 30047 on the grounds of 7801 Quill Point Drive, Bowie, MD to prevent any outages at 7700 Quill Point Drive Bowie, MD from manipulating said box.

vii. Order BGE to place a Sentry Lock on said electrical box number 30047 whereby anyone accessing said box would have to call ahead for authorization to have access to said electrical box.

viii. Order BGE to allow Ms. Brown to purchase her own meter whereby Ms. Brown can report her monthly usage to BGE for billing purposes.

e.) Award any other relief in which this Honorable Court

sees just, fit, and proper.

**A JURY TRIAL IS DEMANDED**

Dated:  April 11, 2014 _____

Rhonda R. Brown
7700 Quill Point Drive
Bowie, MD 20720

202-415-2718

**VERIFICATION**

I hereby certify that the facts contained in the foregoing Complaint are true and correct to the best of my knowledge, information and belief.

_____
Rhonda R. Brown

Respectfully submitted,

_____
Rhonda R. Brown
7700 Quill Point Drive
Bowie, MD 20720

202-415-2718 (voice)